**STATE of Missouri, Respondent,**

v.

**Eddie GRAHAM, Appellant.**

**No. 63635.**

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

Ralph A. Dobberstein, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kirk Lohman, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Charged with rape for having sexual intercourse with his eleven year old step-daughter, § 566.030, RSMo 1978, defendant was found guilty by the jury and sentenced to imprisonment for 15 years. He sought review in the Missouri Court of Appeals, Eastern District, which affirmed the conviction but on application of defendant the cause was transferred here and is determined as though on original appeal.

Defendant contends the trial court erred in (1) permitting testimony that he engaged in prior acts of intercourse and sexual contact with the victim, (2) admitting medical records of the victim not properly qualified under the Uniform Business Records as Evidence law and which denied him his right to cross-examine the maker of the record, and (3) sending to the jury room portions of the victim's medical records not previously read to the jury.

The victim testified to the following: On the evening of June 5, 1979, she was left with her six brothers and sisters in the care of her stepfather, the defendant. At approximately 10:00 p.m., the defendant took her from bed to a couch where he engaged in sexual intercourse with her. This is the incident for which he was charged. The victim then described prior instances of manual and oral sexual acts and sexual intercourse with the defendant beginning in September, 1978 and continuing until June, 1979.

The victim's mother, defendant's wife, testified to changes in the victim during the nine months preceding the charged act of rape: the victim's schoolwork deteriorated; "she would sit up and daydream, and she just acted like she was half scared at all times." One day, the mother said she found the defendant pulling her daughter's pants down. Another night, she testified to finding her daughter "laying there with her legs open" after the defendant left her bedroom; on a third occasion, she went to look for her husband after discovering he was not in bed, and found him squatting beside her daughter's bed. The mother also reported noticing during this period that her daughter's panties "were all soiled and hard in the seat and had a discharge in it."

The grandmother of the victim testified that while the victim's mother was in the hospital having a baby, defendant brought several of the victim's brothers and sisters to her house, but left with the victim for about two hours. This testimony was consistent with the victim's statement that while her mother was in the hospital the defendant took her away and raped her.

The State's final witness was Dr. A. Menon, chief resident in pediatrics at St. Louis City Hospital, who was called to testify concerning a City Hospital emergency room medical record. The record indicated that on June 6, 1979, a physical examination of the victim was conducted at City Hospital by Dr. DeSilva, then a secondary resident in pediatrics.[1] Dr. Menon read a portion of the examination results from the record: "Genitals: Discharge present. Offensive odor. Vagina admits speculum easily. No hymen seen. No bleeding seen." He testified these physical findings were consistent with a history of sexual intercourse between the victim and her stepfather over a period of several months. It is not normal, he said, for a speculum to admit easily into the vagina of an eleven year old child, and vaginal examinations of eleven year old girls are usually conducted under general anesthesia. On cross-examination, Dr. Menon admitted that the medical records did not indicate the size speculum used or that previous sexual intercourse is not the only reason a speculum could admit easily into an eleven year old girl. He stated that previous trauma or penetrating injury could cause the same result, but that there was no indication in the record of a previous physical injury. By stipulation, a laboratory report containing the results of tests done on vaginal and vulva smears from the victim was admitted in evidence, and, reading the results of these tests, Dr. Menon testified: there was no evidence of sperm or gonococcus.

The defendant was the only witness on his behalf. He denied having sexual intercourse with his stepdaughter on June 5, 1979, or any other day. The case was submitted to the jury, which, in mid-deliberation asked to see the victim's medical records. Over defendant's objection, one page of the emergency room medical record, portions of which had been read to the jury, was sent to the jury room.

1. During the trial, it was reported that Dr. DeSilva was no longer working at City Hospi-tal. There was no further explanation of his whereabouts.

Defendant contends that the trial court erred in permitting testimony that he engaged in prior acts of intercourse and sexual contact with the victim. Such testimony, he maintains, constitutes evidence of other crimes for which he was not charged and is irrelevant and highly prejudicial. Defendant asks us to reconsider the rule enunciated in *State v. Bascue,* 485 S.W.2d 35, 37 (Mo.1972); *State v. Baker,* 318 Mo. 542, 300 S.W. 699, 702 (1927): *State v. Hersch,* 296 S.W. 433, 436 (Mo.1927); *State v. Cooper,* 271 S.W. 471, 474 (Mo.1925) and *State v. Cason,* 252 S.W. 688, 689–90 (Mo. 1923), that in cases of statutory rape, evidence of prior intercourse or sexual intimacy between defendant and victim is admissible. We have reconsidered the rule and reaffirm its efficacy.

Ordinarily, the State may not introduce evidence of the accused's other criminal acts to show a probability that he committed the crime on trial because he is a man of criminal character. McCormick's Handbook of the Law of Evidence, § 190 at 447 (2d ed. 1972). When such evidence is relevant for some other purpose, however, it should not be rejected merely because it incidentally proves the defendant guilty of another crime. *State v. Hudson,* 521 S.W.2d 43, 45 (Mo.App.1975). Evidence of criminal acts may be admitted when it tends to establish a motive for the defendant to commit the crime charged. *State v. Mitchell,* 491 S.W.2d 292, 295 (Mo.banc 1973). Prior sexual intercourse or intimacy between defendant and victim indicates a sexual desire for the victim by the defendant and tends to establish a motive for statutory rape, i.e. satisfaction of defendant's sexual desire for the victim. As stated in *State v. Bascue,* 485 S.W.2d 35, 37 (Mo.1972), prior acts of intercourse and "lascivious familiarity" not amounting to intercourse tend to show the "relationship between the parties and the probability that the parties committed the specific act charged (as constituting 'the foundation for an antecedent probability'), or as corroborative evidence. . . ." The point is denied.

Defendant argues in the alternative that though evidence of prior sexual intimacy might generally be admissible in cases of statutory rape, it should have been excluded in this case because the testimony of the victim and her mother was "vague as to what happened and when it happened." Specifically, defendant complains that no dates were given for the abuses described by the victim. We do not agree that the testimony of the victim was impermissibly "vague" or the incidents described unacceptably remote in time. The victim testified that defendant began his molestations in September, 1978, describing in detail how defendant took her to his mother's house, undressed her and had intercourse with her while her mother was in the hospital. Other instances of sexual abuse related by the victim, though not tied directly to dates or events, took place between September, 1978, and June 5, 1979, when the charged act of rape occurred. The victim testified that during this period defendant had intercourse with her "mostly every week or day."

Defendant also argues that the vagueness of the victim's testimony precluded him from effectively asserting an alibi defense. The same argument was rejected in *State v. Bascue,* 485 S.W.2d 35, 37 (Mo.1972). Here, as in *Bascue,* defendant was charged with a specific offense occurring at a particular time on a certain date and was convicted of that offense. Any alibi defense was directed to that particular time and was not nullified by evidence of prior misconduct.

Defendant next contends the trial court erred in admitting medical records of the victim which were not properly qualified under §§ 490.660—490.690, RSMo 1978, Missouri's Uniform Business Records as Evidence law.

Section 490.680 RSMo 1978 provides:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at

or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

At trial, the State called Ms. Valerie Phillips, a clerk in the Medical Records Department at City Hospital, to qualify State's Exhibit 1 under the Uniform Business Records as Evidence law. Ms. Phillips identified State's Exhibit 1 as the original medical records of the victim, made in the regular course of business on June 6, 1979, at or near the time the victim came to City Hospital.[2] Although Ms. Phillips was not custodian of the records, she testified that she handled records in the hospital daily and that the victim's records were not made for purposes of any court proceeding. On this testimony, State's Exhibit 1 was admitted in evidence. Dr. Menon, chief resident in pediatrics at City Hospital, testified that the record contained results of a physical examination of the victim conducted by Dr. DeSilva, a former resident in pediatrics at City Hospital. Menon read physical examination findings from page one of the exhibit, and offered his opinion based on those findings.

▆▆▆ The Uniform Business Records as Evidence law applies to criminal as well as civil cases, see, e.g. State v. Foster, 501 S.W.2d 33, 36 (Mo.1973) and State v. Durham, 418 S.W.2d 23, 30 (Mo.1967), and hospital records fall within its purview. Durham at 30; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 666 (1956); Melton v. St. Louis Public Service Co., 251 S.W.2d 663, 669 (Mo. banc 1952). Though the trial court has wide discretion in determining whether the statutory requirements for admission are met, the record should reveal evidence of compliance with each

requirement. In this case, all but one of the requirements enumerated in § 490.680, RSMo 1978 were satisfied by the testimony of Ms. Phillips.[3] The final requirement, testimony as to the mode of the record's preparation, was satisfied in this case by the nature of the record. The emergency room record was on a printed form identified as an official hospital record completed at or near the time the victim arrived at City Hospital. It was found in the custody of the Records Office of the hospital. An attending physician and nurse-in-charge were identified on the form. The form contains directions to "PHYSICIANS" for completing the form. Near the top, the date and time the victim arrived at the hospital are stamped as "June 6, 1979, 6:10 p.m."; "7:10 p.m." is handwritten under "Medical Treatment" lower on the page. Sections headed "Medical History," "Examination," "X-Ray Laboratory," "Diagnosis," "Medical Treatment," "Conditions on Discharge," and "Instructions to Patient" are filled out in what appears to be the same hand. Following the printed heading "Examination," is the handwritten subheading, "Genitals," and the present tense entry, ". . . admits speculum easily." Considering the nature of this printed form and the handwritten and stamped entries it bears, a finding that the form was regularly used by doctors at City Hospital, or nurses at the direction of such doctors, to record the details of emergency room treatment as it was administered was within the trial court's discretion. The reason for the business records exception to the hearsay rule is the presumptive verity of routine recording of business activities performed on a regular basis at times close to the transaction recorded. Union Electric Co. v. Mansion House Center North Redevelopment Co.,

---

**2.** State's Exhibit 1 identified by Ms. Phillips consisted of four pages: (1) a blue page headed, "Emergency Department, Hospital Division, (2) a Missouri Ambulance Report, (3) a page entitled "Sexual Assault, and (4) a medical record form containing a number of laboratory findings. Pages (2), (3) and (4) were never read or shown to the jury and are not at issue here. Our discussion, therefore, focuses on page (1), the emergency room medical report.

**3.** It was well within the trial court's discretion to find that Ms. Phillips was a qualified witness who testified as to the identity of the record, that it was made in the regular course of business at or near the time the victim arrived at the hospital, and that the sources and time of the record's preparation justified its admission.

494 S.W.2d 309, 313 (Mo.1973). While hearsay should be admitted with caution in any trial, and particularly a criminal case, the testimony of the Records Clerk combined with the nature of the document in this instance warranted a presumption of verity and justified the record's admission.

It is next asserted that admission of the medical record improperly denied defendant an opportunity to cross-examine the examining doctor. This contention is also without merit. Though the essential purpose of the hearsay rule is to provide an opportunity to cross-examine a declarant and to promote the reliability of evidence, the Business Records as Evidence law creates a statutory exception to the rule excluding hearsay. Objection to a business record as hearsay or as depriving a party of the right to cross-examine is, by definition, ineffective if the record is properly admitted under the Uniform Business Records as Evidence Law.[4] *State v. Durham,* 419 S.W.2d at 30; *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677, 681 (Mo. banc 1959); *State v. Taylor,* 486 S.W.2d 239, 242 (Mo. 1972); *Allen v. St. Louis Public Service Co.,* 365 Mo. 677, 285 S.W.2d 663, 666 (Mo.1956).

Defendant contends that allowing Dr. Menon to base his opinion on medical findings made by another doctor was error, because the findings constituted the expert opinion of a doctor whose qualifications were not established. An identical assertion was disposed of in *Allen v. St. Louis Public Service Co.,* 285 S.W.2d at 668. In that case, as in this, there was direct testimony that the examining doctor was a resident physician at the time the entries were recorded. From this, the Court appropriately noted, "we may presume his qualifications." *Id.*

Defendant finally argues that the trial court erred in sending to the jury room portions of the victim's emergency room medical record not previously read to the jury. In addition to the physical findings read by Dr. Menon at trial, the record contained sections entitled, "Medical History," and "Diagnosis." Under "Medical History" appeared the handwritten entry, "Eleven year old black female brought by mother with a history of having been raped by the stepfather while the mother was away," and under "Diagnosis," was the handwritten entry, "History of rape by stepfather." Defendant contends it was an abuse of discretion for the trial court to send this record to the jury without expunging sections containing prejudicial hearsay and irrelevant material and which erroneously appeared to be the opinion of a doctor based on his physical examination.

The record sent to the jury was page one of State's Exhibit 1. When State's Exhibit 1 was first offered in evidence, defendant objected that it was not properly qualified under the Business Records as Evidence law. This objection was overruled, a ruling we affirm today, and State's Exhibit 1 was admitted in evidence. Though proper qualification of a hospital record under the Business Records as Evidence Law does not necessarily make all its parts admissible, *Winterton v. Van Zandt,* 351 S.W.2d 696, 702–03 (Mo.1961); *Allen v. St. Louis Public Service Co.,* 285 S.W.2d at 666, and objectionable portions may be excluded if proper specific objection is made, *Boland v. Jando,* 395 S.W.2d 206, 207 (Mo. 1965); *Thomas v. Wade,* 361 S.W.2d 671, 676 (Mo. banc 1962); *Allen v. St. Louis Public Service Co.,* 285 S.W.2d 663, 666 (Mo. 1956), an objection going to the whole is properly overruled if any part of the record is admissible. *State v. Griffin,* 497 S.W.2d 133, 136 (Mo.1973); *Breshears v. Union Electric Co.,* 373 S.W.2d 948, 952 (Mo. banc 1964); *Happy v. Blanton,* 303 S.W.2d 633, 641 (Mo.1957); *Allen v. St. Louis Public Service Co.,* 285 S.W.2d at 667. Since the parts of Exhibit 1 containing physical findings of discharge, odor, no hymen and no bleeding were clearly admissible and the record was properly qualified, defendant's general objection was properly overruled.

---

**4.** Defendant does not brief and we therefore do not decide whether admission of the emergency room medical report in this case violated his constitutional rights to confront the witnesses against him. U.S. Const.Amds. VI and XIV; Mo. Const. Art. I, § 18(a).

**108**

Defendant contends, however, that even if the entire record had been properly admitted, it was an abuse of the trial court's discretion to send portions of the record to the jury during its deliberations. Sending exhibits properly admitted into evidence to the jury during deliberations is a matter within the sound discretion of the trial court, *Freeman v. Kansas City Power and Light Co.,* 502 S.W.2d 277, 282 (Mo.1973); *State v. Hale,* 371 S.W.2d 249, 257 (Mo. 1963); *State v. Smith,* 357 S.W.2d 120, 123 (Mo.1962), and there is no indication in this case that the court's compliance with the jury's request to examine a properly admitted exhibit constituted reversible error. The record contained results of the victim's physical examination and a number of other entries in addition to the statements under "Medical History" and "Diagnosis." The handwriting on the form was almost illegible. Even if the statements were deciphered by the jury, they clearly indicate the doctor was recording the *history* of the victim related by the victim or her mother, not his own observations. The statements on the form simply repeated the story told to the jury by mother and victim at trial. There was no abuse of discretion. The judgment of the trial court is affirmed.

All concur.