**STATE of Missouri, Respondent,**

v.

**Roy SUTHERLAND, Appellant.**

**Roy SUTHERLAND, Appellant,**

v.

**STATE of Missouri Respondent.**

No. 78884.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1997.

Rehearing Denied March 25, 1997.

As Modified March 25, 1997.

374

Deborah B. Wafer, Dist. Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl Caponegro, Assistant Attorney General, Jefferson City, for Respondent.

PRICE, Judge.

Roy Sutherland appeals his conviction of one count of robbery and one count of armed criminal action. Sutherland alleges that the trial court erred in: (1) allowing a prison visitor card into evidence over his hearsay objection; (2) overruling his *Batson* challenge to the prosecution's peremptory strikes; and (3) overruling his Rule 29.15 motion and his claim of ineffective assistance of counsel. Because we find that the trial court did not err in regard to any of these points, the judgments are affirmed.

## I.

On the morning of July 1, 1993, at around 12:30 a.m., the hotel clerk at a Holiday Inn in St. Louis County was confronted by a black man wearing a white shirt and sunglasses. The man brandished a gun and said, "Give me your money." The clerk put the recent-

ly-counted cash drawer on the counter. The robber, later identified as Kevin Adell, reached into the tray, grabbed the bills, and left the hotel.

Shortly after the robbery, Officer Jerome Paskiewicz of the St. Louis County police department received a broadcast describing the suspect and warning that the suspect was probably armed. Officer Paskiewicz spotted a car being driven by a person matching the description. As Officer Paskiewicz pulled behind the car, he noticed that the rear license plate was covered with a piece of brown paper bag. He activated his lights and began to pursue the vehicle up to speeds of ninety miles per hour. The car was stopped at 12:38 a.m., seven miles from the Holiday Inn. After the driver, defendant Roy Sutherland, and the front-seat passenger, Arnita Tate, were removed from the car and frisked, the police found Adell lying in the back seat of the car. A further search of the car revealed money in nearly the exact bill denominations as were taken from the hotel, a gun, and sunglasses. The front license plate of the car also had been covered by brown paper. The hotel clerk was taken to the location of the search where she identified Adell as the robber, and the gun and sunglasses as identical to the ones used in the robbery.

Sutherland's theory at trial was that he did not have knowledge of the robbery and that he did not know Adell prior to picking him up on the highway as a hitchhiker. Arnita Tate, Sutherland's girlfriend, testified that she did not know Adell, but urged Sutherland to pick him up on the night of the robbery. To rebut that claim, the prosecution introduced into evidence, over the objection of defense counsel, Adell's prison visitor card. The card showed that Adell listed Sutherland as a welcomed visitor to the county jail. James Sutton, II, custodian of records for the St. Louis County Department of Justice Services, testified that he maintained the visitor logs and that the visitor cards were made and kept in the regular course of business. The trial court overruled defense counsel's continuing objection and admitted the visitor card.

The jury found Sutherland guilty as charged. Sutherland was sentenced as a prior, persistent, and class X offender, to thirty years on Count I, robbery in the first degree, and thirty years on Count II, armed criminal action, with those sentences to be served concurrently. Sutherland's Rule 29.15 motion was overruled by the trial court.

## II.

Sutherland claims that the prison visitor card was not admissible because it was hearsay. Sutherland also claims that admission of the visitor card violated his rights as protected by the Confrontation Clause of the Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution.

### A.

A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value. *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Hearsay statements generally are inadmissible. *State v. Shurn,* 866 S.W.2d 447, 457–58 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). A hearsay statement is admissible, however, when the statement falls within a recognized exception to the hearsay rule. *State v. Spica,* 389 S.W.2d 35, 46 (Mo.), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *see, e.g., Hamilton v. Missouri Petroleum Prods. Co.,* 438 S.W.2d 197, 201 (Mo.1969) (excited utterance exception); *Oglesby v. St. Louis Pub. Serv. Co.,* 338 S.W.2d 357, 363 (Mo.App.1960) (exception for statements for purposes of medical diagnosis or treatment); *Stewart v. Sioux City & New Orleans Barge Lines, Inc.,* 431 S.W.2d 205, 210–11 (Mo.1968) (business record exception).

In Missouri, one of the hearsay exceptions, the business records exception, is codified in the Uniform Business Records as Evidence Law ("the Act"):

A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the

mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

§ 490.680, RSMo 1994. Essentially, the Act sets out three requirements that must be met as a predicate to admissibility of a document as a business record: (1) the custodian of records must testify to the record's identity and mode of preparation; (2) the custodian must testify that the record was made in the regular course of business, at or near the time of the act, condition or event; and (3) the court must find that admission is justified by the sources of information, and the method and time of preparation. § 490.680, RSMo 1994.

█ Kevin Adell's prison visitor card met these three requirements. First, James Sutton testified to the identity of Exhibit No. 25 by stating that it was the "visiting card of Kevin Adell." Sutton also explained the mode of preparation in the following way:

Q. Would you explain to the jury how this works, how a visitors log works?

A. When a prisoner is first inducted into the Department of Justice Services system, they talk to their social·workers who give them this visiting card, in order to put visitors names down, so they can get visitors during the time that they are in our custody.

. . . .

Q. If someone's name is not on the visitors card, are they allowed to visit the inmate?

A. No.

Second, Sutton acknowledged that the visitor card was made in the regular course of business at or· near the time of the event at the St. Louis County Department of Justice Services. Third, it was not error for the trial court to find that the sources of the information and the method and time of preparation indicated sufficient reliability so as to justify the admission of the record. Adell had no motivation to misrepresent who he wanted to have visit him. Additionally, neither the so-cial worker, who gave Adell the card, nor the custodian of records, who maintained the records, had any motivation to alter the visitor card. Furthermore, the regular manner in which visitor cards are made and maintained and the purpose for which they are made and maintained support the conclusion that the record is reliable.

█ Even if a document falls under the business record exception, however, the document will not be admissible if the underlying statement is inadmissible hearsay. A hearsay statement contained within other hearsay evidence is admissible only where both the statement and the original hearsay evidence are within exceptions to the hearsay rule. *Killian Const. Co. v. Tri–City Const. Co.*, 693 S.W.2d 819, 835 (Mo.App.1985).

█ Here, there is no problem of "double hearsay", however, because the underlying statement is not hearsay. "[E]vidence is hearsay only if its evidentiary value depends on drawing an inference from the *truth of the statement*. If the relevance of the statement lies in the mere fact that it was made, no reliance is placed on the truth of the statement or the credibility of the out-of-court declarant, and the statement is not hearsay." JOHN C. O'BRIEN & ROGER L. GOLDMAN, FEDERAL CRIMINAL TRIAL EVIDENCE 345 (1989) (emphasis added); *see also Bond v. Wabash R.R. Co.*, 363 S.W.2d 1, 5 (Mo.1962); JOHN C. O'BRIEN, MISSOURI LAW OF EVIDENCE 345 (3d ed., 1996). The underlying statement that Adell wanted Sutherland to visit him was not offered to prove that Adell actually wanted Sutherland to visit him. The mere fact that Adell put Sutherland's name on the card tended to prove that Adell and Sutherland knew one another and inferentially supported the prosecution's contention that Sutherland and Adell planned the robbery and getaway together. Therefore, the statement on the visitor card, "I would like Roy Sutherland to visit me," was not hearsay.

Because the visitor card met the requirements of § 490.680, RSMo 1994, and because the underlying statement was not hearsay, the trial court did not abuse its discretion in admitting the visitor card into evidence.

## B.

█ Sutherland also contends that the admission of the visitor card violated his rights protected by the Confrontation Clauses of the United States Constitution and the Missouri Constitution. Under the Sixth Amendment of the United States Constitution and article I § 18(a) of the Missouri Constitution, criminal defendants have the right to confront witnesses against them. This usually requires that if a person's statement is used by the prosecutor against a defendant, that person must be produced to testify under oath at trial, unless he or she is unavailable to testify. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). Sutherland claims that the State did not produce Adell and did not demonstrate that Adell was unavailable.

█ The Supreme Court, in *Ohio v. Roberts,* "set forth a 'general approach' for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause." *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990). The Court held:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts, supra,* at 66, 100 S.Ct. at 2539. In *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), however, the Supreme Court limited the unavailability requirement by stating, "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *Id.* at 354, 112 S.Ct. at 741. Under the holding of *White,* if the challenged out-of-court statements were not made in the course of a prior judicial proceeding, the statements must only show "indicia of reliability" to meet the requirements of the Confrontation Clause.

█ Here, the challenged out-of-court statement was not made in a prior judicial proceeding. It was made on the prison visitor card. Consequently, it was not necessary for the State to either produce Adell at trial or show he was unavailable. Furthermore, the statement met the "indicia of reliability" prong of *Roberts* because the statement fell under the firmly rooted business records exception, codified at § 490.680, RSMo 1994. *See, e.g., United States v. Roulette,* 75 F.3d 418, 422 (8th Cir.) ("The admission of such ... reports under the business records exception provides such a firmly rooted exception." (citing *United States v. Baker,* 855 F.2d 1353, 1359 (8th Cir.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989))), *cert. denied,* —— U.S. ——, 117 S.Ct. 147, 136 L.Ed.2d 93 (1996); Comment, *Hearsay, The Confrontation Guarantee and Related Problems,* 30 LA. L. REV. 651, 668 (1970) ("Properly administered the business and public records exceptions would seem to be among the safest of the hearsay exceptions as the danger of inaccurate memory or narration on the part of the witness is virtually removed."). Admission of the prison visitor card did not violate Sutherland's right to confront witnesses against him.

## III.

Sutherland also alleged that the trial court erred in overruling his *Batson* motion. The State argues that Sutherland did not preserve the objection for appeal because Sutherland failed to make a specific objection to the exclusion of the venire members or request that the peremptory strikes be quashed.

## A.

█ The United States Supreme Court, in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), reaffirmed the principle that the use of peremptory strikes of venire members on the basis of race is unconstitutional. *Id.* at 84, 106 S.Ct. at 1716. This Court has adopted the three-step process of *Batson* and its progeny

for determining whether the defendant's rights had been violated by race-based peremptory challenges: (1) the defendant must timely object to the strike by sufficiently raising the inference that the prosecutor exercised the strikes to purposefully remove venire members on the basis of race; (2) once the defendant makes the prima facie showing, the burden shifts to the prosecutor to proffer a race-neutral reason for striking the challenged venire member; (3) the trial court then must decide whether the defendant has established purposeful discrimination. *State v. Parker,* 836 S.W.2d 930, 934–36 (Mo. banc), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). If the court decides that the prosecutor's reasons are pretextual, the peremptory strike will be quashed. *Id.*

### B.

■■■■ "It is clear that a defendant must timely object to preserve a *Batson* claim...." *Parker,* supra, at 935. The purpose of the timeliness rule for *Batson* challenges is "to allow the trial court the opportunity to correct errors and avoid prejudice in the first instance...." *Id.* at 936. "[A] *Batson* challenge raised before the venire is excused and the jury sworn is timely." *Id.* at 935. However, "[g]eneral allegations of error not based upon specific objections or requests made during trial are insufficient to preserve the allegations for review...." *Williams by Wilford v. Barnes Hospital,* 736 S.W.2d 33, 36 (Mo. banc 1987). In order for Sutherland to have preserved for appellate review his *Batson* objection, he must have made a clear, specific objection and request that the strike be quashed.

■■■ It is clear from the trial transcript that no such objection or request for relief was made by Sutherland until the motion for a new trial—well after the jury was sworn. Following the prosecutor's strikes, the trial judge, *sua sponte,* asked the prosecutor to explain which black venirepersons were being stricken and why they were being stricken. The prosecutor stated that two black

panel members were struck because they had relatives who had served recent prison terms and one black panel member was struck because he was unemployed. Defense counsel responded:

> I would just respond to that by saying that Juror No. 2 himself has a conviction, SIS, out of—a misdemeanor SIS out of St. Louis County. And although that's not penitentiary time, I mean, that's a person that has a conviction. And he was not struck.
>
> And I'm certainly not acquainting [sic] being retired with being unemployed, but I guess I don't understand why being unemployed necessarily makes someone a poor juror. If it's because they are not working, then Mr. Sokol, who's 20, who's retired, could also be in that category. And he was not struck.
>
> That's all I would respond.

The trial judge then questioned the prosecutor on his experience with unemployed jury members, and concluded:

> Okay. I'll give you permission to strike the black venirepersons. I believe that the reasons are sufficiently neutral to withstand the *Batson* test. Okay?

Defense counsel simply responded, "Okay. And here's my strikes." With that exchange, the unselected venirepersons were dismissed.

Nothing in that exchange, from the judge's inquiry into the prosecutor's selections until the time the unselected venirepersons were dismissed, could be construed as a clear, specific objection to the prosecutor's strikes or a request that the strikes be quashed. Therefore, Sutherland failed to preserve for appellate review the allegation of error by making a proper and timely objection to the strikes.

### C.

■■■ Because Sutherland did not preserve the objection to the prosecution's peremptory strikes, review is limited, at most, to the plain error standard.[1]  *State v. McMil-*

---

1. We do not reach the issue of whether plain error review must be given in this case. In *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983), we

stated that "[t]he plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been preserved for

*lin,* 783 S.W.2d 82, 95 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179, *reh. denied,* 498 U.S. 994, 111 S.Ct. 543, 112 L.Ed.2d 552 (1990). Plain error exists only when the court finds that a manifest injustice or a miscarriage of justice has occurred. *Id.*

■ The prosecution offered two race-neutral reasons for striking blacks from the panel: two black panel members had relatives who were currently serving time in prison or who recently had served time in prison; and one black panel member was unemployed. To rebut the neutrality of these reasons, defense counsel merely stated that a white panel member was not struck even though he had a misdemeanor conviction, and that a retired white panel member was not struck. In fact, defense counsel conceded that a misdemeanor conviction cannot be equated with convictions leading to penitentiary time. The prosecutor, who also struck a white panel member because she was unemployed, responded that unemployed people "do not feel a part of the system . . . [a]nd in that sense, they are less likely to give the State a fair shake."

■ The defendant has the burden of showing that the prosecution's proffered race-neutral explanations are "merely pretextual and that the strikes were racially motivated." *Parker, supra,* at 939. "[B]ecause the trial judge's findings largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Sutherland did not meet his burden of showing that the proffered reasons were pretextual or racially motivated. Assuming plain error review is appropriate, we find that no plain error exists.

**IV.**

In his final point on appeal, Sutherland contends that the motion court erred in find-

ing that trial counsel was not ineffective for failing to continuously object to evidence seized from his car. Sutherland claims that a reasonably competent trial counsel in the same or similar circumstances would have continuously objected to the evidence seized from the car because there was no probable cause to search the car.

■ To make a valid ineffective assistance of counsel claim, Sutherland must show that his counsel "fail[ed] to use the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and the failure to exercise such diligence is prejudicial." *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 1088, 137 L.Ed. 2d 222 (1996). Counsel's failure to make a useless or meritless objection is not grounds for an ineffective assistance of counsel claim. *State v. Weaver,* 912 S.W.2d 499, 518 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996); *Leisure v. State,* 828 S.W.2d 872, 877 (Mo. banc), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

■ Objecting to the admission of evidence seized from Sutherland's car would have been useless. The totality of the circumstances—the broadcasted description of the suspect that matched the driver, the covered license plate, and the attempt to flee the police—created "a reasonable suspicion, based upon specific and articulable facts, that the [passengers were] involved in criminal activity." *State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992) (quoting *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Furthermore, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). Counsel was not ineffective for failing to continually object because the car was prop-

---

appellate review." In *State v. Sutherland,* 859 S.W.2d 801, 803 (Mo.App. E.D.1993), the Court of Appeals, Eastern District, expressly declined to give plain error review for an unpreserved *Batson* challenge because "it would address the

rights of the excluded venirepersons and not the rights of the defendant." Here, we only decide that, assuming plain error review is merited, we find no plain error.

erly stopped and the evidence was properly seized.

 "Appellate review of the motion court's actions on a Rule 29.15 motion is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous." *Driver v. State,* 912 S.W.2d 52, 54 (Mo. banc 1995). Because objecting to the admission of the seized evidence would have been useless, the motion court was not clearly erroneous in overruling Sutherland's rule 29.15 motion.

### V.

The judgments are affirmed.

All concur.