STATE of Missouri, Respondent,

v.

Rosie KREIDLER, Appellant.

No. 25377.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 20, 2003.

Motion for Rehearing or Transfer Denied Dec. 15, 2003.

Application for Transfer Denied Jan. 27, 2004.

Kent Denzel, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charnette D. Douglass, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Rosie Kreidler ("Appellant") appeals her conviction and sentence following a jury trial for possession of a controlled substance in violation of section 195.202.[1] The Circuit Court of Greene County had sentenced Appellant to 60 days in jail and imposed a $500.00 fine. Appellant raises two points of trial court error. She alleges that the trial court erred in failing to suppress evidence seized as a result of an officer's order for her to drop items she held in her hands during a *Terry* investigatory stop.[2] Further, Appellant maintains that the trial court erred in permitting hearsay testimony relating to the results of laboratory testing of some of these items.

Viewed in the light most favorable to the verdict, *State v. Culbertson*, 999 S.W.2d 732, 733 (Mo.App.1999), the record shows that early in the morning on October 4, 2000, Officer Tom Luellen responded to an activated burglar alarm at a business on Commercial Street in Springfield, Missouri. Officer Luellen noted the front of the building seemed secure, but requested that Officer Tony Celeste, who arrived as backup, check the rear of the building. Officer Celeste discovered a white pickup parked in an alley behind the business and radioed Luellen to join him. The officers parked their police vehicles five yards behind the pickup truck and noticed two occupants in the vehicle. When the brake lights of the truck came on as if it was going to leave, Officer Luellen activated his vehicle's emergency lights, exited his vehicle and yelled for the pickup to stop. The truck stopped and Luellen ordered the driver to exit the vehicle and walk backwards in his direction. The driver was then handcuffed and Officer Luellen ordered the passenger to step out of the vehicle. The passenger, the Appellant in this matter, exited the vehicle holding several items in her hand, including a lit cigarette.[3] Officer Luellen asked her three or four times to drop these items before she complied with his requests. Appellant then dropped the items on the ground. Thereafter, the Appellant walked backwards to Officer Celeste, as requested, and was handcuffed.

Officer Luellen searched the ground where Appellant dropped the items and found a lit cigarette, a couple of small white rock-like items, a pair of scissors and several unlit Salem brand cigarettes. Based on his training and experience, Offi-

---

1. All statutory references are to RSMo 2000, unless otherwise specified.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. The record shows Appellant was 70 years old at the time of the incident.

cer Luellen believed the white rock-like items to be "rock cocaine." Officer Luellen then began to search the pickup truck. Shining his flashlight inside the passenger door panel, the officer found additional white rock-like items, more loose Salem brand cigarettes, and a small pipe for smoking crack cocaine. He also found a pack of Salem cigarettes in the passenger side floorboard and another pipe in the ashtray.

Appellant did not testify or offer any witnesses on her behalf. Following a jury trial on October 29, 2002, Appellant was convicted of possession of a controlled substance and sentenced to sixty days in jail and a $500.00 fine. This appeal followed.

Appellant brings two points on appeal. In her first point, Appellant contends that the trial court erred in overruling her Motion to Suppress. First, she asserts that Officer Luellen did not have reasonable and articulable suspicion that she was armed when he ordered her to drop the items in her hand. Next, she contends that his order constituted an invalid patdown search which exceeded the scope of *Terry v. Ohio*, thus making the purported rocks of cocaine found on the ground inadmissible against her. Finally, she claims that the purported contraband found in the truck should have been suppressed as fruits of an illegal search.

■ In her second point on appeal, Appellant claims that the trial court erred and abused its discretion in permitting Ms. Monk to testify about "what another lab technician, [Jeremiah Morris], communicated to [Ms. Monk] of his findings ... in that Monk testified to the work product of another person who worked in the lab but the State did not seek to admit the lab report into evidence under the business records exception to the hearsay rule." *See* §§ 490.660–490.690. She argues Ms. Monk's testimony was the sole evidence used to convict her, thereby violating her due process rights and denying her the ability to cross-examine the technician who actually performed the tests of the purported contraband materials. Appellant's second point is dispositive of this appeal, and we need not review her first point of trial court error.

■ A trial court typically has broad discretion in deciding whether to admit evidence and, as such, its decision will not be disturbed unless a clear abuse of discretion is shown. *State v. Williams*, 976 S.W.2d 1, 2 (Mo.App.1998). There "is an abuse of discretion where it 'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Id.* (quoting *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991)). Even assuming that the trial court did abuse its discretion in allowing the challenged evidence, Appellant must show that it was reversible error to be entitled to appellate relief. *See id.* at 3. To show such error, Appellant must demonstrate not only that the admission of the challenged evidence was erroneous, but also that it was prejudicial. *State v. Masden*, 990 S.W.2d 190, 193 (Mo.App. 1999). A conviction will be reversed due to admission of improper evidence only if Appellant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different. *State v. Evans*, 992 S.W.2d 275, 290 (Mo.App.1999); *see State v. Barton*, 936 S.W.2d 781, 786 (Mo. banc 1996).

■ We note that the "Uniform Business Records as Evidence law applies to criminal as well as civil cases...." *State v. Graham*, 641 S.W.2d 102, 106 (Mo. banc 1982). Although "the essential purpose of

the hearsay rule is to provide an opportunity to cross-examine a declarant and to promote the reliability of evidence, the Business Records as Evidence law creates a statutory exception to the rule excluding hearsay." *Id.* at 107. Although "the trial court has wide discretion in determining whether the statutory requirements for admission are met, the record should reveal evidence of compliance with each requirement." *Id.* at 106.

In the instant matter, the State informed the Court that the laboratory technician from the Springfield crime laboratory, Mr. Morris, was no longer employed with the laboratory, and was unavailable to testify at trial regarding the results of the tests on the white rock-like items discovered at the scene. Therefore, the State announced that another technician or criminalist, Kay Monk, who had "reviewed Mr. Morris' work" and was the "custodian of the lab reports that are kept there[,]" was available to testify as to the "testing procedures that were done, and the results of those tests." Defense counsel objected to Monk's testimony on the basis of hearsay. Objection was also lodged as to what "she [Ms. Monk] believes Jeremiah Morris may or may not have done and what his tests results are...." Defense counsel also requested and received a continuing objection based on the lack of foundation for Ms. Monk's testimony. The trial court overruled defense counsel's objections.

Monk then testified that she had been a criminalist with the Missouri Highway Patrol Crime Laboratory for nine years and that she "perform[ed] supervisory duties, drug analysis, blood alcohol analysis, and liquor content analysis" for the laboratory. She recounted that she had supervised the technician, Mr. Morris, who actually performed the tests in this matter, and that he had been employed with the laboratory "from June of 1998 through February of 2001." She testified regarding Mr. Morris's qualifications. She also stated she recognized his handwriting on the blue tape on the evidence containers; and she discussed the general tests and procedures followed by the laboratory in analyzing purported contraband materials. Ms. Monk also detailed the peer review process the laboratory uses when a criminalist finished his or her analysis. In this regard, she testified that when Mr. Morris had completed his testing she had personally reviewed the entire case file and his work to be sure of its accuracy. Ultimately, Ms. Monk was allowed to testify that in her opinion "the sample contain[ed] cocaine base," and that the weight was "0.12 grams." Notably, however, the State did not offer into evidence the laboratory report containing these conclusions.

We observe that hearsay is any out-of-court statement offered to prove the truth of the matter asserted and such statements are generally inadmissible, unless they fit within certain hearsay exceptions. *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). "[T]he hearsay rule is designed to protect a party from out-of-court declarations of other persons who cannot be cross-examined as to the bases of their perceptions, the reliability of their observations, and the degree of their biases." *State v. Brown*, 833 S.W.2d 436, 438 (Mo.App.1992). In order to qualify a business record as an exception to the hearsay rule under section 490.680, three conditions must be met:

(1) either the custodian of records or other qualified witness testifies to the identity and mode of preparation of the record; (2) the custodian or qualified witness testifies that the record was made in the regular course of business, at or near the time of the act, condition or event; and (3) the court finds admission of the record is justified by the

sources of information and the method and time of preparation of the record.[4] *In re Estate of Graham*, 59 S.W.3d 15, 20 (Mo.App.2001); *see also Sutherland*, 939 S.W.2d at 376–77. Opinions of an expert contained in a laboratory report prepared by that expert are admissible without the presence and testimony of the expert. *State v. Taylor*, 486 S.W.2d 239, 242 (Mo. 1972). However, it must be shown as part of the report's foundation that the expert would be properly qualified to express an opinion if testifying in person. *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977).

At trial, the State argued that Ms. Monk's foundational testimony, her ability to identify the substances, and her previous supervision of Mr. Morris's work in this matter met the requirements of the business records exception to the hearsay rule. We disagree.

The principal means by which the State could have complied with the statutory provisions of the Uniform Business Records as Evidence Law would have been for the State to have introduced the *actual* laboratory report into evidence that had been prepared by Mr. Morris. That is not what happened here. Instead, what occurred in this instance is that the State laid a proper foundation for the introduction of a laboratory report but never entered one into evidence. In fact, the record is devoid of any showing that the State ever intended to introduce an actual laboratory report into evidence.

■ Additionally, while both Ms. Monk and Mr. Morris appear to be amply qualified as experts in their field, the general rule is that it is improper for one expert, Ms. Monk in this case, to base her opinion on the opinion of another, here Mr. Morris, unless it is in evidence and included as an assumption in a hypothetical question. *See Hornberger v. St. Louis Public Serv. Co.*, 353 S.W.2d 635, 641 (Mo.1962).

■ Here, the testimony at issue, that of Ms. Monk, is unequivocally hearsay. *Sutherland*, 939 S.W.2d at 376–77. It is not based on Ms. Monk's personal testing of the purported contraband materials or even the observations of the tests themselves, but on testimony merely reciting the analysis performed by another technician, *together with a recital of that other technician's purported conclusions.* Accordingly, there has been a failure to comply with the provisions of the Uniform Business Records as Evidence Law because the actual laboratory report was never introduced into evidence. "Objection to a business record as hearsay or as depriving a party of the right to cross-examine is, by definition, ineffective *if the record is properly admitted* under the Uniform Business Records as Evidence law." *Graham*, 641 S.W.2d at 107 (emphasis added). The admission of the testimony of Ms. Monk constituted prejudicial error. Prejudicial error is reversible error. *State v. Wayman*, 926 S.W.2d 900, 904 (Mo.App.1996).

■ Based on the foregoing, we determine there is a reasonable probability that in the absence of this evidence the verdict of the jury would have been different. Without the laboratory report proving that the small white rock-like objects found by Officer Luellen were cocaine, the State failed to prove an essential element

---

4. Section 490.680 states: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

of the crime, namely that Appellant possessed cocaine. Here the State had the burden of proving every element of a crime beyond reasonable doubt. *State v. Rowe,* 838 S.W.2d 103, 111 (Mo.App.1992). It did not carry that burden in this case. Further, there was no additional evidence in the record which proved that the white, rock-like objects were, in fact, cocaine. " 'A criminal defendant may only be convicted on the evidence properly in the record.' " *State v. Moore,* 99 S.W.3d 579, 584 (Mo.App.2003) (quoting *State v. Stephens,* 88 S.W.3d 876, 881 (Mo.App.2002)). Point Two is well taken.

The judgment of conviction and sentence of the trial court is reversed and the cause is remanded for a new trial. *See State v. Wood,* 596 S.W.2d 394, 398 (Mo. banc 1980).

PREWITT, J. and GARRISON, J., concur.