STATE of Missouri, Respondent,

v.

Larry O. McCRARY, Appellant.

No. WD 54092.

Missouri Court of Appeals,
Western District.

Jan. 20, 1998.

use of peremptory challenges to remove all African–Americans from the jury. Mr. McCrary also argues that the trial court erred in submitting exhibits to the jury without explaining that they were in substitution for other material that the jury requested but which had not been admitted into evidence. We find that Mr. McCrary failed to prove that the State purposefully discriminated against African–Americans in jury selection and that no miscarriage of justice or manifest injustice resulted from the court's submission of exhibits to the jury. Therefore, we affirm Mr. McCrary's convictions.

## I.  FACTUAL   AND   PROCEDURAL   BACKGROUND

On the evening of May 27, 1996, Chandra O'Neal was working at the McDonald's Express at 1414 Independence Avenue. Because it was a slow evening, Ms. O'Neal told Larry McCrary he could go home early. Several hours later, the alarm on the door sounded. When Ms. O'Neal went to investigate, a person wearing a mask, all black clothing, and holding a knife came around the corner. The person pushed Ms. O'Neal into the freezer and demanded her keys. The person had Ms. O'Neal open both cash registers and removed the money from each. The robber then ran out the door. In the hallway, Ms. O'Neal found a plastic bag containing a pair of sandals. She turned the sandals over to the police.

From the robber's voice, smell, height, and build, Ms. O'Neal identified the robber as Mr. McCrary. Ms. O'Neal testified that, from working with Mr. McCrary, she recognized the scent of his cologne, combined with the smell of cigarette smoke. She also recognized his voice when he asked for her keys and told her to open the cash registers. She also said that the fact the robber told her to open only the particular registers which were used that day indicated he had inside knowledge of the type an employee would have. Police officers went to Mr. McCrary's apartment building and saw a man matching Mr. McCrary's description outside wearing dark, loose fitting clothing. The man at first denied he was Mr. McCrary, but then admitted it. The officers then placed Mr. McCrary

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Larry O. McCrary appeals his convictions of first degree robbery and armed criminal action. Mr. McCrary alleges that his right to equal protection was violated when the judge overruled his objections to the State's

under arrest. While Mr. McCrary was in custody, and at police request, he voluntarily tried on the sandals that had been recovered from the crime scene. They fit, although they did not fit extremely well.

The State charged Mr. McCrary by information, as a prior offender, with one count of first degree robbery and one count of armed criminal action. The jury found Mr. McCrary guilty on both counts, and the judge sentenced him to concurrent terms of 10 years on each count. This appeal followed.

## II.  BATSON CHALLENGES

In his first point on appeal, Mr. McCrary claims that the trial court erred in overruling his objections to the State's use of peremptory challenges to remove the only four African–American members from the jury panel. Mr. McCrary argues that this violated his right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Missouri Constitution.

Because the witnesses to the robbery had not seen the robber's face under the mask, during voir dire the prosecutor asked if anyone in the venire would be unable to "consider looking at the evidence in this case without a facial identification?" Fifteen members of the panel indicated to the prosecutor that they would require a facial identification to convict a defendant. During the defendant's specific examination of the venire, defense counsel repeated this question and asked if the venirepersons could be fair to both sides in spite of believing they could not convict without a facial identification. Most of those 15 venirepersons who had responded earlier stated that they believed they could be fair. The only venirepersons who did not so state were Ronald Phelps, who stated explicitly that he could not be fair; Lemuel Sherman, who stated that he doubted he could be fair; and Linda Bussard, who stated that she could "probably" be fair. Mr. Phelps and Mr. Sherman were later stricken for cause, but the court denied the prosecutor's challenge to Ms. Bussard for cause. One of the other 15 venirepersons who originally had

trouble with the lack of a facial identification, David McCormick, was also stricken for cause, apparently on unrelated grounds.

After the challenges for cause were complete, the judge stated that the panel from which the jury would be selected would be comprised of venirepersons 1 through 28, with the exception of three who had been stricken for cause and one who had failed to report for jury duty. This left a panel of 24 persons from which the final jurors would be chosen. Apparently,[1] only six of these 24 panel members were among the 15 venirepersons who had originally stated that they would require a facial identification, but who had ultimately agreed they could be fair despite the lack of a facial identification. These six venirepersons were Sharon Byers, Andrew Lamothe, Donald Brown, Bill Warren, Edna Mason, and Linda Bussard.

The parties then exercised their peremptory challenges. The State used all six of its peremptory challenges to remove the six venirepersons who had originally stated they would have trouble with the lack of a facial identification. The only four African–Americans on the panel, Ms. Byers, Mr. Lamothe, Mr. Brown, and Ms. Mason, were among these six persons removed by the prosecutor's peremptory challenges. Defense counsel objected to the State's strikes of these four African–Americans on the basis that by striking these jurors, the State had removed all African–Americans from the jury. The judge went through defense counsel's objections to each of these venirepersons individually. In response to each objection, the prosecutor replied that he struck each venireperson because they "were the only six people that I note from the 24 we selected the panel from who indicated they would need more than a facial identification." Defense counsel did not contest the prosecutor's contention that he had stricken the only remaining venirepersons out of the 15 who had originally indicated that they would have trouble with non-facial identification. Instead, he argued that this rationale was simply a pretext for removing all the African–Americans from the jury, noting that the

1.  *See* discussion *infra* of the prosecutor's stated          reasons for his strikes.

four stricken African–Americans (and the two other venirepersons stricken) had ultimately stated they could be fair and impartial. The judge did not agree that the strikes were pretextual. He found instead that the prosecutor had a race-neutral reason for striking the venirepersons and denied each of defense counsel's challenges. Mr. McCrary appeals this ruling.

We will set aside the trial court's finding that the State discriminated in its use of peremptory challenges only if it is clearly erroneous. *State v. Smulls*, 935 S.W.2d 9, 15 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2415, 138 L.Ed.2d 180 (1997); *State v. Weaver*, 912 S.W.2d 499, 509 (Mo. banc 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). The trial court's determination is clearly erroneous only if we are left with a definite and firm impression that a mistake has been made. *State v. Gray*, 887 S.W.2d 369, 385 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995).

The Equal Protection Clause of the United States Constitution prohibits the prosecution from using peremptory strikes to remove prospective jurors solely on the basis of their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To determine whether the use of peremptory challenges violates a person's Constitutional rights, the court must apply a three-step analysis.

First, to establish a prima facie claim under *Batson*, the defendant must object to the prosecutor's peremptory challenge and identify the racial group to which the stricken venireperson belongs. *Smulls*, 935 S.W.2d at 14; *Gray*, 887 S.W.2d at 383–84; *State v. Shurn*, 866 S.W.2d 447, 456 (Mo. banc 1993), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Second, the prosecutor has the burden of production to offer a race-neutral reason for the strike. *Id.* This step "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). If the prosecutor provides a race-neutral reason, the defendant must prove purposeful dis-

crimination and that the State's reasons were merely pretextual and the strike was racially motivated. *Smulls*, 935 S.W.2d at 14; *Gray*, 887 S.W.2d at 383–84; *Shurn*, 866 S.W.2d at 456. It is not until this third step of the analysis "that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771.

At the time the State exercised its peremptory challenges, Mr. McCrary objected that the strikes of Ms. Byers, Mr. Lamothe, Mr. Brown, and Ms. Mason were based on race and identified the venirepersons as being African–American. Therefore, the first prong of *Batson* was satisfied and the burden shifted to the prosecutor to provide a race-neutral explanation for the strikes. The prosecutor then claimed that he used the peremptory challenges to remove these four venirepersons because they had all originally stated that they would require a facial identification of the defendant. This reason is not based on the venirepersons' race, and therefore satisfies the second step of the *Batson* inquiry. The burden then shifted back to Mr. McCrary to prove purposeful racial discrimination. Mr. McCrary argued that racial discrimination was proven by the fact that the prosecutor removed all of the African–Americans from the jury. The trial court ruled that the prosecutor had stated race-neutral reasons for the strikes and overruled defense counsel's objections.

On these facts, we do not believe that the trial court was clearly erroneous in its determination that Mr. McCrary failed to show that the true reason for the peremptory strikes was racial discrimination. An important factor in determining whether the defendant has proved purposeful discrimination is whether the State used peremptory challenges to remove similarly situated Caucasian venirepersons. *Smulls*, 935 S.W.2d at 16; *Weaver*, 912 S.W.2d at 509. Here, the prosecutor used peremptory challenges to remove two Caucasian venirepersons, Mr. Warren and Ms. Bussard, who also stated that they would require a facial identification. In fact, he removed all of the venirepersons

who said they would have trouble with non-facial identification, whatever their race. In this situation, the fact that the State's peremptory challenges resulted in removal of all of the African–Americans from the jury is not dispositive. Disparate impact alone does not create a *per se* violation of equal protection. *Hernandez v. New York,* 500 U.S. 352, 362, 111 S.Ct. 1859, 1867–68, 114 L.Ed.2d 395 (1991); *State v. Parker,* 836 S.W.2d 930, 934 (Mo. banc), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992); *State v. Davis,* 894 S.W.2d 703, 706 (Mo.App.1995). Point denied.

## III. EXHIBITS GIVEN TO JURY

In his second point on appeal, Mr. McCrary claims that trial court erred and abused its discretion in providing two exhibits to the jury without explaining that the exhibits were in response to a jury request for other information. Mr. McCrary asserts that this was misleading to the jury.

During its deliberations, the jury requested to see pictures of the McDonald's restaurant, the sandals found at the crime scene, and "an inventory of clothing when arrested." The court was willing to provide the pictures of the McDonald's restaurant, which were Exhibits 2 through 8, and the sandals, which were Exhibits 9, 10(a), and 10(b), but either there was no inventory of the clothing Mr. McCrary was wearing when he was arrested or it was not in evidence. Therefore, defense counsel suggested that the judge send exhibit 12 "as a picture of the defendant's jeans he had on at the time he was arrested." Exhibit 12 was a photograph of Mr. McCrary, apparently showing his jeans, taken when he tried the sandals on at the police station. The court agreed to submit Exhibit 12 to the jury, as well as a similar photograph which had been admitted as Exhibit 13. The judge sent these photographs along with a note stating, "Exhibits 2 through 8 and Exhibits 9, 10(a), and 10(b) and Exhibits 12 and [13] are herewith provided." The judge, concerned that the jury might be confused as to why no inventory was sent to the jury room, then added, "If an inventory was taken, it is not in evidence and cannot be provided."

Mr. McCrary made no objection at the time the exhibits were given to the jury that they were incomplete or that the judge's note was misleading. Therefore, his claim of error is reviewed under the plain error rule. *State v. Gray,* 887 S.W.2d 369, 387 (Mo. banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). To be entitled to relief under the plain error rule, the defendant must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice would occur if the error is not corrected. *State v. Silvey,* 894 S.W.2d 662, 671 (Mo. banc 1995). Manifest injustice depends on the facts and circumstances of the particular case, and the defendant bears the burden of establishing manifest injustice amounting to plain error. *State v. Zindel,* 918 S.W.2d 239, 241 (Mo. banc 1996). The assertion of plain error places a much greater burden on a defendant than if the defendant had preserved the issue at trial. *State v. Bradshaw,* 845 S.W.2d 143, 144 (Mo.App.1993).

We see no plain error here. In so concluding, we first note that there was no exhibit responsive to the jury's request for an inventory. It thus would have been within the trial judge's discretion to have simply told the jury that no such exhibit existed. Any error must therefore have come, not from the failure to send the inventory, and not from the explanation that no inventory existed in the record, but from the content of the photographs which were sent. Yet, it was defense counsel who asked that these photographs be sent. He can hardly complain of error in complying with his own counsel's request that the photographs be sent to the jury. *State v. Shaw,* 915 S.W.2d 775, 783 (Mo.App.1996).

Equally dispositive is the fact that Mr. McCrary has failed to include a copy of the photographs in the record on appeal. It is up to the appellant to provide an adequate record on appeal. *State v. Naucke,* 829 S.W.2d 445, 460 (Mo. banc), *cert. denied,* 506 U.S. 960, 113 S.Ct. 427, 121 L.Ed.2d 348 (1992); *Dewitt v. Mitchell,* 938 S.W.2d 305, 307 (Mo.App.1997). In the absence of the photographs, we could not base a finding of error on any prejudice allegedly resulting

from the content of the photographs, for they are not available for our inspection. Furthermore, Mr. McCrary does not even claim that the content of the photographs was inflammatory. He simply asserts that they were "misleading" because the jury may have been confused as to why the photographs were sent to it since they were not directly responsive to any of its requests for exhibits. Mr. McCrary does not explain how any such confusion would have prejudiced him, however. At worst, the jury might have thought the exhibits were included by accident. No manifest injustice could have resulted from such a conclusion.

For all of these reasons, Mr. McCrary's convictions are affirmed.

All concur.