**STATE of Missouri, Respondent,**

v.

**John Wayne COPPLE, Appellant.**

**No. WD 58110.**

Missouri Court of Appeals, Western District.

March 6, 2001.

As Modified May 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied Aug. 21, 2001.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent..

Before HOLLIGER, Presiding Judge, LOWENSTEIN, Judge, and NEWTON, Judge.

1. Section 566.034 RSMo 1994.

RONALD R. HOLLIGER, Presiding Judge.

Defendant John Wayne Copple was convicted of statutory rape [1] by a jury in the Circuit Court of Caldwell County. He appeals the conviction, claiming the trial court erred: (1) in giving the jury the "hammer instruction", MAI–CR3d 312.10, and (2) by misinterpreting, or misapplying, the state of mind exception to the hearsay rule. We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 22, 1999, 16–year old Kirsten and her sister were "cruising" [2] with friends in Braymer, Missouri. When they stopped at the local car wash to talk, at approximately 11:00 P.M., Kirsten met and spoke with Copple. A short time later, they all ended up at the house of Chad Cope, and talked in his bedroom. Both Copple and Kirsten testified that everyone else left the room and the two remained in Chad's bedroom. Both Copple and Kirsten testified about the intimate events that next took place. Kirsten testified that she and Copple kissed for a while, that Copple then removed her clothing and his own clothing, that he took a condom from his pocket and put it on, and that they had sex. Copple, on the other hand, testified that they kissed and "one thing led to another," but "before anything could happen, her mom walked in on [them]."

Copple was charged, as a prior offender, with felony statutory rape in the second degree. Following a trial of the matter on November 15, 1999, the case was submitted to the jury. The jury returned a verdict of guilty. This appeal follows.

## DISCUSSION

Copple claims the trial court abused its discretion (1) in giving Instruction No. 10,

2. Cruising is "riding around" in a car.

MAI–CR3d 312.10, the "hammer" instruction, because it coerced the jurors to find him guilty, and (2) in permitting Kirsten to testify about what her mother told her when they arrived home.

### Point I

In his first point, Copple claims that the court erred in giving the hammer instruction when it knew the deadlocked jury's numerical division and how the vote was split. He argues that the risk of coercion is particularly high when the jurors know that the judge is aware of how the vote is divided, and that the lone juror may well consider the instruction to reflect the judge's desire for a particular result.

■ It is well established in Missouri that the length of time a jury is allowed to deliberate and the decision whether to give the hammer instruction are within the discretion of the trial court. *State v.. Jackson*, 896 S.W.2d 77, 80 (Mo.App.1995). To establish an abuse of discretion, the defendant must show, based on the record, that the jury's verdict was coerced. *Id.* The giving of the hammer instruction itself is not coercive, as "it urges frank and open discussion, tolerance, and the desirability of a unanimous verdict but cautions each juror against basing a verdict on evidence he does not believe is true." *Id.* (quoting *State v. Kinder*, 858 S.W.2d 838, 840 (Mo. App.1993)). Thus, in determining whether a jury's verdict has been coerced by the giving of the hammer instruction, an appellate court considers several factors, including: (1) the amount of time the jury deliberates before the instruction is given, (2) the amount of time that elapses between the reading of the instruction and the verdict, (3) whether the trial court knows numerically how the jury is split and the position of the majority, and (4) whether the giving of the instruction conforms with the Notes on Use. *Jackson*, 896 S.W.2d at 80.

■ We initially consider the third factor because the other factors coincide and require much the same analysis. The third factor considers whether the trial court knows the numerical division of the jury and the position of the majority. From the jury's note, it is clear the trial court was aware of the numerical division of the jury and the position of the majority. No error arises from the judge knowing this information alone when the communication from the jury is unsolicited and voluntarily given to the court. *State v. Broadux*, 618 S.W.2d 649, 652 (Mo. banc 1981); *State v. Rowling*, 687 S.W.2d 246, 247 (Mo.App.1985); *State v. Brockman*, 634 S.W.2d 575, 577 (Mo.App.1982).

Next, we consider the amount of time the jury deliberates before the instruction is given and the amount of time that elapses between the reading of the instruction and the verdict. We also consider whether the giving of the instruction conforms with the Notes on Use. We find it important to mention first that Copple does not complain that the trial court's giving of the instruction did not conform with the Notes on Use. Our review of the record does not reveal whether the court conformed entirely. The Notes on Use read as follows:

1. This is a revision of MAI–CR3d 312.10.
2. This instruction may be given when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked.
3. Prior to the giving of this instruction, and outside the presence and hearing of the jury, the attorneys should be permitted to make any objections on the record to the giving of this instruction.

4. This instruction shall be numbered, and in addition to being read to the jury, shall be handed to the jury. Oral argument by the attorneys is not permitted. When returned by the jury, it shall be filed with the other instructions of the Court.

5. The Court should note in the record the time that the jury first retired to deliberate, the time of giving this instruction, and the time that the jury returns a verdict or a mistrial is declared.

Our review of the record reveals that the jury began its deliberations at 3:28 P.M. At 4:00 P.M., the court indicated its receipt of a note from the jury, signed by the foreman, which read, "The jury vote is 11 guilty and 1 not guilty. What do we do now? The not guilty is very firm." The jury had deliberated only 32 minutes before the court received its note. The record is silent as to the time the hammer instruction was given, and the time the jury returned its verdict. When the court received the jury's note, it promptly indicated its intent to give the hammer instruction, and defense counsel objected. The objection was overruled, and the jury was returned to the courtroom and was given the instruction. Although the court did not record the exact time the instruction was given, it did record the time the jury's note was received, at 4:00 P.M. From this, it is reasonable for us to infer that the instruction was given shortly after 4:00 P.M. More importantly, however, we do not have the benefit of knowing how much time elapsed between the time the jury was provided the instruction and the time it returned its verdict. This fact is crucial. If the jury came back very quickly, it could be suggestive of the lone juror's acquiescence to the will of the majority and, therefore, a coercive suggestion of the court. On the other hand, if the jury further deliberated a considerable amount of time before returning a unanimous verdict, that may indicate that the jury followed the instruction and considered and deliberated upon each other's viewpoints.

After reviewing the jury's note, the court indicated to counsel that it intended to give the hammer instruction. Though not expressed on the record, the court clearly deemed it appropriate to give the instruction. The judge asked whether there was any objection. Defense counsel objected on the basis that the instruction was intended "basically to hammer the last person into submission." The objection was overruled. Counsel then suggested that the court, instead, question the foreman to determine whether further deliberations would be helpful. Counsel for the state objected and, after sustaining the state's objection, the court proceeded with reading the "hammer" instruction, numbered Instruction No. 10.

It is our belief that a trial court should carefully consider the possibility of alternatives other than the delivery of the hammer instruction immediately upon learning that the jury is deadlocked, when, as here, the jury has deliberated only a short time before the instruction is given. The jury's note did not indicate that they were hopelessly deadlocked, nor that the split was firm despite hours (or even one hour) of deliberation. There likely were other alternatives available to the trial court short of issuing the hammer instruction. The court might have first asked the jury if additional deliberations would be useful and then allowed such additional deliberations. Or the court might have simply directed the jury to "continue [its] deliberations." *State v. Leroy*, 724 S.W.2d 277, 279 (Mo.App.1987).

Despite our concern about so quick a use of the hammer instruction, the standard for our review is whether the trial

court abused its discretion. All of the above factors, that is, recording the time of the jury's inquiry, the court's response, the time the hammer instruction is given, when the jury is returned to the jury room, and when the jury returns its verdict, are intended to assist the trial court, and the appellate court on review, with information that may help determine whether the hammer instruction was coercive when the issue is raised. Neither the time the jury was read the instruction nor when the jury returned its verdict is shown by the transcript or legal file that makes up the record that is before this court. It was Copple's obligation to make a record of those events when they occurred and to furnish that record on appeal. *State v. Jennings*, 815 S.W.2d 434, 443 (Mo.App.1991). In the absence of such a record, this court cannot base a finding of error or prejudice based on the event. *State v. McCrary*, 963 S.W.2d 674, 678–79 (Mo.App.1998). We cannot determine whether the trial court did not follow the Notes on Use. We do not presume that the court did not follow those requirements but only that the record does not indicate one way or the other. Because there is no record of how long the jury deliberated after being given the hammer instruction, we cannot say that the jury was coerced into finding Copple guilty, or that the trial court clearly abused its discretion or prejudiced Copple by giving the hammer instruction, or by giving it when it did. Copple's first point is denied.

## Point II

In his second point, Copple claims the trial court erred in permitting Kirsten to testify, over his objection, that her mother told her what time she (the mother) and her sister arrived at Chad Cope's house. In a statement to the police the day after the incident, Kirsten reported that her friends, Chad, Jacqueline and Jessie, left the Cope house at 1:45 A.M., and that her sister and mother arrived there at 2:45 A.M. At trial, during cross-examination, Kirsten testified that her friends could not have left at 1:45 because her mother told her that she and her mother and sister arrived back home at "ten till 2:00." Copple objected to Kirsten's testimony regarding what her mother told her about the time they arrived home on the basis that it was hearsay. Copple argues that such testimony was "an out-of-court statement for the truth of the matter asserted and was not admissible as an exception to Kirsten's state of mind." The prosecutor claimed that the testimony was not offered to prove the truth of the time they arrived home, but simply whether the mother made such a statement to Kirsten. The trial court asked the prosecutor if it was attempting to determine the "state of mind of the *witness*," to which the prosecutor replied, "yes." (our emphasis). The trial court overruled Copple's objection and allowed Kirsten to answer. It is Copple's position that there is no such exception to the general rule excluding hearsay, and that in allowing it, the trial court "misinterpreted, or misapplied, the state of mind exception to the hearsay rule." He claims that Kirsten's state of mind as to what time they arrived home is not relevant, and that its only "relevance" was to prove the truth of what time they arrived home. The state acknowledges that the trial court incorrectly ruled that Kirsten's statement fell within the state of mind exception to the hearsay rule,[3] but contends that Copple has shown no prejudice as a result of that error because the mother was available to, and later did, testify to the same information.

---

**3.** Nor does the state argue that the testimony was admissible on some other ground.

■ Hearsay is any out-of-court statement offered to prove the truth of the matter asserted that depends on the veracity of the statement for its value. *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). Trial courts have broad discretion in determining whether to admit or exclude testimony. *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). Courts generally exclude hearsay because of the inherent lack of trustworthiness that accompanies such testimony. *See, State v. Link*, 25 S.W.3d 136, 145 (Mo. banc 2000). Hearsay testimony is generally not trustworthy because the out-of-court statement is not subject to cross-examination, is not offered under oath, and neither the judge nor the jury is able to judge the declarant's demeanor in assessing witness credibility. *Id.*

■ The hearsay rule is designed to protect a party from out-of-court declarations of other persons who cannot be cross-examined as to the bases of their perceptions, the reliability of their observations, and the degree of their biases. *State v. Brown*, 833 S.W.2d 436, 438 (Mo. App.1992). Even if hearsay evidence is erroneously admitted, then reversal of the case will only be required if the appellant shows that he suffered undue prejudice as a result of the error. *State v. Haddock*, 24 S.W.3d 192, 195 (Mo.App.2000). We have not discerned from Copple's arguments any undue prejudice suffered by him as a result of the admission of Kirsten's testimony.

■ Generally, "statements of a declarant's present mental condition made out of court are excepted from the hearsay ban" and are admissible "in limited situations when they are relevant and the relevancy outweighs their prejudicial effect." *State v. Bell*, 950 S.W.2d 482, 483 (Mo. banc 1997). The hearsay declarations of a victim's state of mind are particularly relevant where the defendant has put the victim's mental state at issue by claiming accident, self-defense or suicide. *State v. Shurn*, 866 S.W.2d 447, 458 (Mo. banc 1993).

At issue here is the statement of a declarant who is neither the witness nor the victim. Again, the state acknowledges that the trial court incorrectly found that Kirsten's statement fell within the state of mind exception to the hearsay rule.

We agree with Copple that the state of mind exception does not apply to Kirsten's testimony and, therefore, the testimony was hearsay and should not have been admitted. However, other than recognizing that the testimony was presented improperly by the state to rehabilitate Kirsten by minimizing inconsistencies in her prior statements, we are not persuaded that Copple suffered undue prejudice as a result of the admission of the testimony such that would require reversal.

The judgment of the trial court is affirmed.

## MOTION FOR REHEARING

In conjunction with his Motion for Rehearing, Copple has filed a motion to supplement the record on appeal. In our original opinion we noted that the original record on appeal did not indicate either the time the instruction was given or the time the jury returned with its verdict. We could not, therefore, determine the elapsed time between the giving of the hammer instruction and the jury's verdict. Given that missing information, we could not fully consider whether the jury was coerced or the trial court abused its discretion to Copple's prejudice. Copple's motion to supplement indicates that in copy-

ing the court's docket sheet for inclusion in the Legal File the clerk apparently did not copy the back of one of the pages. The omitted page indicates that the hammer instruction was given at 4:20 p.m. and the jury returned its verdict at 4:40 p.m. This situation well illustrates the importance of counsel carefully reviewing the legal file and not depending upon the clerk or counsel's own staff to correctly include all items necessary for consideration of an appeal. In the interests of justice we sustained the motion to supplement the record on appeal.

We nevertheless find that Copple has not shown that the trial court abused its discretion or that the jury was coerced into finding him guilty because of the hammer instruction. Although significant, mere shortness of time between giving a hammer instruction and returning the verdict does not demonstrate a coercive effect. We observe that some 20 minutes expired between the jury's note and the giving of the instruction. We will not assume that the jury continued to discuss the case after the note. In addition, the record now reflects that the jury had the case under submission for approximately an hour and 12 minutes before rendering a verdict. In considering whether the jury was coerced, we have considered that Copple was charged with only one count. He did not deny being present with the victim at the time of the offense and in bed with her. She testified that they had intercourse. He testified that they were interrupted before the act was consummated. The central issue was consequently a resolution of the credibility of Copple and the victim. We cannot say that 20 minutes between giving the hammer instruction and returning a verdict was insufficient to resolve that issue and indicative of coercion. Although the trial court may have been too quick to utilize the hammer under the facts of this case, we do not find it abused its discretion or that Copple was prejudiced. The motion for rehearing is therefore denied.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.