**STATE of Missouri, Plaintiff–Respondent,**

v.

**William J. BURDETTE, Defendant–Appellant.**

No. 25628.

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 2004.

Rosalynn Koch, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charnette D. Douglas, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

William J. Burdette ("Appellant") was charged by amended information with one count of attempted trafficking in the first degree, a violation of Section 195.222,[1] one count of assault in the second degree, a violation of Section 565.060, and one count of unlawful use of a weapon, a violation of Section 571.030. The case proceeded to trial by jury on the first and third counts only, at the conclusion of which Appellant was found guilty of attempted trafficking in the first degree. The jury acquitted him of the charge of unlawful use of a weapon. The trial court later sentenced Appellant to fourteen years imprisonment. This appeal followed.

In his sole point on appeal, Appellant alleges that the trial court erroneously admitted into evidence, over Appellant's objection, certain testimony that Appellant claims was inadmissible hearsay. We are not persuaded by this argument.

Appellant does not contest the sufficiency of the evidence supporting his conviction. Viewed in the light most favorable to the verdict, the evidence presented revealed the following: on April 22, 2002, Appellant met in his home with Jordan Newman ("Jordan")[2] and Appellant's long-time friend Alvan Moss ("Moss") to discuss the possible relocation of a makeshift methamphetamine laboratory ("meth lab") to an abandoned farmhouse owned by members of Moss' family. The proposal to move the meth lab stemmed, apparently, from Appellant's concern that the lab would be discovered by authorities follow-

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. The use in some instances of given names, rather than surnames, is for the sake of clarity; no disrespect is intended.

ing the recent drug-related arrest of a friend of Appellant.

Pursuant to that discussion, Appellant, Jordan, and Moss later transported the meth lab to the Moss farmhouse, with Moss driving his jeep and Appellant and Jordan traveling in Appellant's pickup. Appellant and Jordan initially were unable to locate the farmhouse and accidentally drove through a garden maintained by Moss' sister, Barbara Graham ("Barbara"). When confronted by Barbara, Appellant told her he and Jordan were looking for Moss.

On April 24, 2002, Barbara's husband, Fritz, while escorting his daughter to her bus stop near the farmhouse, noticed that the farmhouse had been tampered with. Upon entering the farmhouse, he discovered the meth lab hidden behind a pile of Sheetrock. Fritz told Barbara of the find and instructed her to call the police. Deputy Michael Hall ("Hall") of the McDonald County Sheriff's Department responded to Barbara's call and, with the help of other officers, transported the meth lab to the sheriff's office.

At approximately 12:30 A.M. on April 25, 2002, Appellant went to the home of Jordan's mother, Deborah Newman ("Deborah"), where Jordan was staying. Appellant told Jordan the meth lab was "gone" and that they had "to find [Moss]." The two then went to the residence where Moss was staying and confronted him concerning the whereabouts of the meth lab, but Moss denied knowing what had happened to it. Moss followed Appellant and Jordan to Appellant's home, where Appellant threatened Moss with a knife and told him he had one hour to find the meth lab. Appellant sent Jordan with Moss to ensure his return, but Moss convinced Jordan to allow him thirty minutes to "get out of town," whereupon he left to stay with friends in Arkansas.

Meanwhile, authorities contacted Mikki Bayne ("Bayne"), a paid confidential informant for drug enforcement officials, because of her affiliation with Moss, who was by that time suspected of being involved with the meth lab found on his family's property. When Moss made contact with his friend, Tim Larrimore ("Larrimore"), Larrimore called Bayne to tell her Moss was in fear for his life and needed a place to stay. In response, Bayne agreed to rent a room at the Super 8 motel in Neosho, Missouri and meet Moss and Larrimore there. In a conversation recorded by Bayne at the hotel, Moss told her his sister had turned in the meth lab to authorities and Appellant was under the mistaken assumption that Moss had stolen the lab. Moss later repeated his story to an undercover officer who came to the hotel room at Bayne's request. Shortly thereafter, Moss and Jordan were arrested. Moss and Jordan later implicated Appellant in their statements to police, and Appellant was arrested as well.

Moss and Jordan later pled guilty to reduced charges of hindering prosecution and received suspended sentences with probation in exchange for their testimony against Appellant. Appellant was charged as a prior and persistent drug offender with attempted first-degree trafficking, second-degree assault, and unlawful use of a weapon. The first and third of those charges were tried to a jury, the jury convicted Appellant of attempted first-degree trafficking, and he was sentenced by the trial court as indicated above. This appeal followed. To the extent it is pertinent to our analysis, the factual background is further expounded below.

◼ In his sole point on appeal, Appellant claims the trial court erred in admitting, over Appellant's objection, Jordan's out-of-court statements to his mother,

Deborah, wherein Jordan told her that Appellant had just made a threatening gesture to Jordan on his way to Appellant's preliminary hearing. Appellant alleges these statements were inadmissible hearsay "because [they] [were] offered for the truth of the matter asserted, and bolstered the testimony of Jordan, who had not been impeached on the point."

 In reviewing a trial court's admission or exclusion of testimony, we are mindful that "[t]rial courts have broad discretion in determining the admissibility of evidence." *State v. Churchill*, 98 S.W.3d 536, 538 (Mo. banc 2003). Moreover, "[w]hen this [c]ourt is asked to review the admissibility of evidence, it 'reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *Id.* (quoting *State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002)).

At trial, during the State's direct examination of Jordan, the following exchange occurred:

Q: We're at the preliminary hearing. What happened?

A: I got out of the car, and my mom got between us, because she didn't want me talking to [Appellant] or anything, and he motioned at me like if I talked or told the story, you know, he went like that.

Q: So you are making a slicing motion across your throat, is that correct, for the record? The record can't see what you are doing.

A: Oh, yeah.

Q: You know why he did that?

A: Yeah.

[APPELLANT'S COUNSEL]: Objection; calling for speculation into his mind.

THE COURT: Sustained.

. . . .

Q: Scare you?

A: Yeah, it did.

Q: You said your mom, Deborah, was with you that day, did you not?

A: Yeah, they were present with me, my mom was.

Q: What did you tell her?

A: I told her that I couldn't make a statement; I couldn't do it. I couldn't be the one to send [Appellant] up.

Q: Why was that?

A: I was afraid after what he did to [Moss], you know.

During cross-examination of Jordan, the following exchange occurred:

Q: So I'm supposing that when [Appellant] said he was going to cut your throat, you told the judge and the prosecutor that day, right?

A: No, I didn't tell anybody that day. I was scared.

Q: You sure didn't say it during your deposition either, did you?

A: No, but I didn't give a truthful statement on my deposition because I was afraid.

Deborah was the next witness called by the State. On direct examination, she testified as follows:

Q: Were you with your son when he came to preliminary hearing on [July 1, 2002]?

A: Yes, I was.

Q: Did you happen to see [Appellant] on your way in?

A: Yes, I did. He was standing on the front steps, smoking a cigarette.

Q: What happened?

A: My son got out of the car and headed for the courthouse. I immediately got out of the car. I got between him and [Appellant]. I

told my son, I was looking at my son, I said, "Do not look at him." And he said, "Mom—"

[APPELLANT'S COUNSEL]: Objection to what he said.

. . . .

Q: Now when he started to say something to you at that point, what was his physical and mental condition?

A: He was—

[APPELLANT'S COUNSEL]: Object to this as calling for speculation.

THE COURT: You can testify now to his physical condition.

A: His physical condition?

THE COURT: Yes.

A: He was extremely distressed. He was very, very, upset.

. . . .

Q: And what did he say?

A: He said, "I cannot testify, mom."

[APPELLANT'S COUNSEL]: I object to this as calling for hearsay.

A: "I can't do this."

THE COURT: It is overruled. I didn't get it out before the answer, but the answer is permitted.

. . . .

Q: Why?

A: He said that [Appellant] had threatened him, that he was afraid that [Appellant] was going to cut his throat. He said that he had motioned across his—

[APPELLANT'S COUNSEL]: Objection to this as hearsay again.

THE COURT: Your objection has been made; it's overruled. Repeat what you said, because there's been some interruptions.

A: He said that he could not testify. He said, "Mom, I can't do this. I cannot testify. [Appellant] is going to kill me." And I said, "No, he

won't. He will not bother. Just don't look at him. Let's go in. You agreed to do this. You are going to do it." And he said, "Mom, he just motioned that he was going to cut my throat."

[APPELLANT'S COUNSEL]: Object to this as—for the record purposes I have to object to this as hearsay.

THE COURT: Well, it's continuing in nature, and you made your record.

Appellant's contention here is that the trial court erred in overruling his repeated objections to Deborah's testimony as to what Jordan told her on their way into the preliminary hearing, claiming the testimony was inadmissible hearsay not falling under any recognized exception to the general prohibition on admitting hearsay testimony.

There can be little doubt that the testimony complained of constituted hearsay, as it was testimony of an out-of-court statement offered for the truth of the matter asserted in the statement. *See State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). Specifically, Jordan's out-of-court statement contained the assertion that Appellant had just threatened him with physical harm, and the statement was offered, through Deborah's testimony, to prove the truth of that statement, i.e., that Appellant had threatened Jordan.

█ Appellant also is correct in noting that hearsay statements "are generally inadmissible." *State v. Robinson*, 111 S.W.3d 510, 513 (Mo.App. S.D.2003) (citing *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998)). Appellant also acknowledges that the rationale for the general rule excluding hearsay testimony is the inherent lack of trustworthiness that accompanies such testimony. *See State v. Copple*, 51 S.W.3d 11, 17 (Mo.App. W.D.2001).

"Hearsay testimony is generally not trustworthy because the out-of-court statement is not subject to cross-examination, is not offered under oath, and neither the judge nor the jury is able to judge the declarant's demeanor in assessing witness credibility." *Id.* Thus, "[t]he hearsay rule is designed to protect a party from out-of-court declarations of other persons who cannot be cross-examined as to the bases of their perceptions, the reliability of their observations, and the degree of their biases." *Id.*

 It is on this principle underlying the hearsay rule that Appellant's argument founders, for the dangers normally inherent to the admission of hearsay testimony are not present in this case. As indicated above, the erroneous admission of hearsay testimony does not warrant reversal unless the appellant demonstrates the presence of undue prejudice resulting from the admission of the testimony. *See State v. Haddock,* 24 S.W.3d 192, 195 (Mo.App. W.D. 2000). We have previously held that such prejudice will not be found in the admission of hearsay testimony where the out-of-court declarant also was a witness at trial, testified concerning the same matter addressed in the declarant's out-of-court statement, and was subject to cross-examination. *See State v. Lebbing,* 114 S.W.3d 877, 880 (Mo.App. S.D.2003); *State v. Mayabb,* 43 S.W.3d 429, 435 (Mo.App. S.D. 2001). "[T]o the extent that a declarant 'is available for live testimony, under oath, the dangers of hearsay are largely nonexistent.' " *State v. Link,* 25 S.W.3d 136, 145 (Mo. banc 2000) (quoting *State v. Schaal,* 806 S.W.2d 659, 664 (Mo. banc 1991), *cert. denied,* 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992)). That is precisely the situation presented in this case; Jordan testified under direct examination to Appellant's threatening gesture, he was cross-examined concerning that claim, and

the out-of-court statements of Jordan testified to by Deborah went to the same issue of fact. Thus, we cannot find that the dangers normally inherent in the admission of hearsay testimony—the inability of the opposing party to subject the declarant to cross-examination to test the veracity of the assertion contained in the hearsay statement—is present in this case or that undue prejudice accrued to Appellant by way of the trial court's admission of the complained-of testimony. Appellant's point is denied.

The rejection of Appellant's claim on appeal does not, however, end our treatment of this case. As indicated above, Appellant was charged as a prior and persistent drug offender. The significance of this is two-fold. First, a person convicted of attempted trafficking as a prior drug offender is subject to a sentence of imprisonment for a class A felony "which term shall be served without probation or parole[.]" Section 195.296. Second, where a person is adjudicated a prior or persistent drug offender, the trial court "shall not instruct the jury as to the range of punishment or allow the jury, upon a finding of guilty, to assess and declare the punishment as part of its verdict[.]" Section 195.275.3. Thus, whether Appellant was properly adjudicated a prior or persistent drug offender is the difference between, on the one hand, *jury-recommended* sentencing to a term of imprisonment *with* the possibility of probation or parole and, on the other hand, *court* sentencing to a term of imprisonment *without* the possibility of probation or parole.

 Given that the parties have not raised any issue concerning the propriety of Appellant's sentence, it is important to note both from whence our responsibility to address the issue *sua sponte* arises and the scope of our review of the issue. It is well settled that issues pertaining to sub-

ject matter jurisdiction may not be waived by a party's failure to preserve such issues for appeal or raise them before an appellate court. *See Brady v. Pace,* 108 S.W.3d 54, 61 n. 5 (Mo.App. S.D.2003); *Cook v. Cook,* 97 S.W.3d 482, 484 (Mo.App. W.D. 2002); *State v. Porter,* 641 S.W.2d 843, 849 (Mo.App. W.D.1982). It also has been previously determined that the issue whether an imposed sentence is sufficient is jurisdictional in nature. *See State v. Sanders,* 871 S.W.2d 454, 457 n. 2 (Mo.App. W.D. 1993) ("sufficiency of sentence is a question of jurisdiction that must be reviewed even if not preserved for appeal"); *Porter* at 849 (appellate court is required to review jurisdictional issue whether sentence is sufficient "even if not properly preserved or presented for appellate review") (citing *State v. Moore,* 633 S.W.2d 140, 147 (Mo.App. W.D.1982) ("trial court was not empowered to make a finding that appellant was a persistent offender because he was neither so charged nor did the evidence at the sentencing hearing support such a conclusion")); *see also* Rule 30.20.[3] That the issue of sentencing sufficiency encompasses whether the imposition of sentence enhancements is within a trial court's authority is indicated by the fact that in *Sanders, Porter,* and *Moore,* the reviewing courts were reviewing such enhancements when they held that such issues were jurisdictional in nature. *See Sanders* at 457; *Porter* at 849; *Moore* at 147.

 We find no authority, however, suggesting that the issue of entitlement to jury-recommended sentencing goes to the sufficiency of a sentence, and we therefore decline to consider *sua sponte* Appellant's right to that form of sentencing, which has not been raised here. Moreover, even if

we were to consider Appellant's right to jury-recommended sentencing, we would be compelled to follow the court's holding in *State v. Emery,* 95 S.W.3d 98 (Mo. banc 2003), where the supreme court held that the defendant there had

> waived his statutory right to a jury-recommended sentence when he allowed the judge to determine his sentence without raising his right to have the jury recommend the sentence.... [The defendant] chose to sit on his statutory right. He cannot now be deemed entitled to a jury-recommended sentence. He has waived that right.

*Id.* at 102–03.

We are cognizant of the provision in Rule 29.15(a) for collateral review of a trial court's jurisdiction to impose sentence, as well as that rule's provision that it "provides the exclusive procedure by which such person may seek relief *in the sentencing court* for the claims enumerated" (emphasis added). However, that the rule specifies the sentencing court as the forum in which a Rule 29.15 proceeding is the exclusive means to challenge the validity of a sentence, as well as the fact that the issue obviously was addressed in direct appeal cases such as *Sanders, Porter,* and *Moore,* compels the conclusion that Rules 29.15 and 24.035, the "post-conviction relief" provisions, give a defendant "alternative forums [sic] in which to challenge subject matter jurisdiction; a [post-conviction] motion is the exclusive procedure for raising the claim with the trial court, and a direct appeal from the conviction may be used to raise the issue at the appellate level." *Jamison v. State,* 918 S.W.2d 889, 891 (Mo.App. W.D.1996).

 We turn, therefore, to a consideration of the trial court's jurisdiction to

---

**3.** References to rules are to Missouri Rules of Criminal Procedure (2003) unless otherwise

indicated.

sentence Appellant. Section 195.275.1(1) defines a prior drug offender as "one who has previously pleaded guilty to or has been found guilty of any felony offense . . . relating to controlled substances[.]" Section 195.275.1(2) defines a persistent drug offender as "one who has previously pleaded guilty to or has been found guilty of two or more felony offenses . . . relating to controlled substances." Section 195.275.2 states that prior pleas of guilty and prior findings of guilty "shall be pleaded and proven in the same manner as required by Section 558.021."

Section 558.021 states that the trial court shall find a defendant to be a prior or persistent offender if the following three prerequisites are met: "(1) [t]he indictment or information, original or amended, or the information in lieu of the indictment pleads all essential facts warranting a finding that the defendant is" a prior or persistent offender, "(2) [e]vidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is" a prior or persistent offender, and "(3) [t]he court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender [or] persistent offender[.]"

The record before us reveals that the first two of the three enumerated requirements of Section 558.021 were met in this case. First, as indicated above, the amended information charged Appellant as a prior and persistent drug offender. Second, the trial transcript records the following exchange, which occurred outside the hearing of the jury:

THE COURT: [Prosecutor], you've filed with the clerk of this Court in this respective matter a pen pack,[4] is that correct?

[PROSECUTOR]: That's correct, your Honor.

THE COURT: Have you viewed that, that [Appellant's counsel]?

[APPELLANT'S COUNSEL]: I have, your Honor.

THE COURT: Do you have any specific objection?

[APPELLANT'S COUNSEL]: I do not. It was filed under custodian of records affidavit, and we're within the statutory time period.

THE COURT: Okay. [Appellant's counsel], you need not voir dire on range of punishment, since it's going to be judge sentencing upon conviction.

[APPELLANT'S COUNSEL]: Okay.

The foregoing exchange reveals at least two things: first, evidence was presented for the purpose of meeting the second requirement of Section 558.021 that the State provide proof of a defendant's prior conviction prior to him being adjudicated a prior or persistent offender and, second, the trial court apparently was under the impression that the requirements of that statute had been satisfied.

In this regard, the trial court was mistaken, for the third requirement of Section 558.021 was not met, i.e., the trial court did not make the mandated findings of fact that warranted a finding beyond a reasonable doubt that Appellant was a prior or persistent drug offender. That this is so is also reflected in the copy of the judgment contained in the record, which does not indicate that Appellant was adjudicated a prior or persistent drug offender. Thus, even though the trial court's statements hint at the courts' belief that the statutory requirements for adjudicating Appellant a prior or persistent offender had been met, " 'that does not suffice. The statute contemplates that the convictions

---

4. This term is not defined in the record. We infer that "pen pack" refers to a certified record of a defendant's prior conviction records.

be found according to indictment, that the proof shall conform with the charge, and that the findings describe the offenses which constitute the proof.'" *Moore* at 147 (quoting *State v. Thompson,* 629 S.W.2d 361, 369 (Mo.App. W.D.1981), aff'd, 629 S.W.2d 369 (Mo. banc 1982)). "This court shall not attempt to reconcile the trial court's remarks with the finding in the judgment." *Calicotte v. Director of Revenue,* 20 S.W.3d 588, 593 (Mo.App. S.D.2000). " 'The mere ruling, decision, or opinion of the court, no judgment or final order being entered in accordance therewith, does not have the effect of a judgment, and is not reviewable by appeal[.]'" *Martin v. Director of Revenue,* 44 S.W.3d 822, 824 (Mo.App. S.D.2001) (quoting 4 C.J.S. *Appeal and Error,* § 153c (1957)).

■ Having not been found a prior or persistent drug offender as charged by the State, Appellant was entitled, as indicated above, to both jury-recommended sentencing and a sentence that included the possibility for probation or parole. As to the right to jury-recommended sentencing, we noted, on the basis of the holding in *Emery,* that Appellant waived that right by not seeking to avail himself of it at trial. *See Emery* at 103. As to the right to receive a sentence that included the possibility for probation or parole, we find, based on the judgment before us and the lack of the requisite finding by the trial court that Appellant was a prior offender, that Appellant was not sentenced as a prior or persistent offender and that he therefore suffered no prejudice at sentencing.

The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.