STATE of Missouri, Plaintiff–Respondent,

v.

Larry D. CORAM, Defendant–Appellant.

No. 27992.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 6, 2007.

Kent Denzel, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Larry D. Coram ("Appellant") brings this appeal from a conviction in a court-tried case of the class C felony of assault in the second degree for knowingly causing physical injury by means of a dangerous

instrument, a violation of section 565.060.[1] Appellant claims the trial court erred in (1) failing to grant a judgment of acquittal because there was insufficient evidence to establish that the phone was a dangerous instrument and (2) in allowing hearsay testimony which was used as substantive evidence against him. We find no error and affirm the judgment.

Victim, a 93–year–old man, had hired Appellant to be his caretaker. Appellant had worked in this capacity for approximately one year before the incident occurred. On July 8, 2005, Appellant, Victim, and Minnie "Mae" Griffin, an acquaintance of Victim, were present at Victim's residence. When Ms. Griffin arrived at Victim's residence Appellant and Victim were arguing about Victim not eating his food. Ms. Griffin offered to go into town and pick Victim up some food and Appellant "hit the ceiling" and told Ms. Griffin she was not going to bring food to Victim because it would just go into the trash can. Ms. Griffin left around 6:00 p.m., leaving Appellant and Victim alone in the residence.

Later, after Appellant had been talking on the telephone, he threw it at Victim hitting him in the eye. Appellant then ran over to Victim, put his thumb in Victim's mouth, and shook Victim's head around. Victim testified it was Appellant's method of controlling Victim.

On July 10, 2005, Victim's son, John Young, checked Victim into Clearview Nursing Home. On July 12, 2005, Ruth Hatley, Victim's former caretaker, went to visit Victim. After seeing Victim's condition Ms. Hatley went to the nurse's station and told Jo Carolyn Noe that Victim was in "bad shape" and "something ought to be done." Ms. Noe went to see Victim and saw that he was "badly bruised" with a "bruise on his eye and ... on his chin." After hearing Victim explain that he had been struck in the face with a telephone, Ms. Noe called the Division of Health and Senior Services to explain the situation and file a report.

Officer Tim Bartlett was dispatched to Clearview Nursing Home to investigate the report of elder abuse that Ms. Noe filed. Officer Bartlett observed that Victim had a black eye and abrasions around his lower lip. At trial, Ms. Hatley, Ms. Noe, Cheryl Cassey and Officer Bartlett were allowed to testify which facts Victim informed each of them of, supporting Victim's claim that Appellant had thrown a phone at him, stuck his finger in his mouth, and caused his injuries.

■ In his first point, Appellant claims the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to establish that the phone was a dangerous instrument. Section 565.060 states:

A person commits the crime of assault in the second degree if he:

. . . .

(2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument[.]

"Dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9). "Serious physical injury" is a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment

1. All references to statutes are to RSMo 2000, unless otherwise specified.

of the function of any part of the body." Section 556.061(28).

▆▆ A dangerous instrument, unlike a deadly weapon, is not designed for use as a weapon and may have a normal function under ordinary circumstances. *State v. Arnold*, 216 S.W.3d 203, 208 (Mo.App. S.D. 2007). "The key to determining whether an object is a dangerous instrument is whether the object can kill or seriously injure 'under the circumstances in which it is used.'" *Id.* (quoting *State v. Johnson*, 182 S.W.3d 667, 672 (Mo.App. E.D.2005)). "Missouri courts have found a variety of seemingly innocuous objects to be dangerous instruments by analyzing whether the defendant knowingly or purposely used the object in a manner in which it was readily capable of causing death or serious physical injury." *Id.* Appellant argues that there was insufficient evidence from which the court could find that the telephone, under the circumstances in which it was used, by being thrown, was capable of causing death or other serious physical injury.

This Court will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense.[2] *State v. Cushshon*, 218 S.W.3d 587, 589 (Mo.App. E.D.2007). In determining whether there was sufficient evidence, we review "the evidence in the light most favorable to the judgment, disregarding any contrary evidence, and granting the State all reasonable inferences from the evidence." *State v. St. George*, 215 S.W.3d 341, 345 (Mo. App. S.D.2007). We may not, however, supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. *Cushshon*, 218 S.W.3d at 589.

We believe sufficient evidence was presented at trial from which a reasonable person could have found that the phone, under the circumstances in which it was used in the context of this case, was a dangerous instrument. Although Appellant makes much of the lack of evidence concerning what type of phone was thrown, the facts remain that a phone was thrown at the head of an incapacitated, 93–year–old man from a close range with such force that it caused serious bruising and a black eye still noticeable four days after the event. The phone was capable of causing serious physical injury because of the physical condition of Victim, the location of the injury, the force with which it had to have been thrown, and the serious disfigurement on the victim. Point I is denied.

▆▆ In his second point, Appellant claims the trial court erred in admitting out-of-court statements of Victim relaying what Appellant had done because such statements were inadmissible hearsay. Specifically, he contends the testimony of Officer Bartlett, Ms. Noe, Ms. Cassey, Keith Lawson, and Ms. Hatley contained inadmissible hearsay that the trial court relied on in reaching its judgment.

▆▆ A hearsay statement is an out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value. *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). Hearsay statements are generally inadmissible unless they fall within a recognized exception to the hearsay rule. *Id.* They are inadmissible because of the "inherent lack of trustworthiness that accompanies such testimony." *State v. Copple*, 51 S.W.3d 11, 17

**2.** "In a court-tried case the sufficiency of the evidence is determined by the same standard as in a jury-tried case." *State v. Harris*, 774 S.W.2d 487, 491 (Mo.App. E.D.1989).

(Mo.App. W.D.2001). "Hearsay testimony is generally not trustworthy because the out-of-court statement is not subject to cross-examination, is not offered under oath, and neither the judge nor the jury is able to judge the declarant's demeanor in assessing witness credibility." *Id.* Even when hearsay testimony is erroneously admitted, however, the case will only be reversed if the appellant shows that he suffered undue prejudice as a result of the error. *Id.*

The trial court overruled each hearsay objection to the testimony of Officer Bartlett, Ms. Noe, and Mr. Lawson of what Victim told each of them.[3] After being told that the testimony of Victim was going to be admitted by stipulation, the court stated:

Court:—this testimony of [Victim] and if he says—if she says something that [Victim] is not going to say, make that objection and then we'll strike it from the record.

. . . .

If [Victim's testimony is] going to be introduced into the record, then there's—this is just duplicity and—and—and it's on how the events occurred and when they occurred and not as to the truth of what they say. The truth [of] what they say is going to be based on other things. So to that extent your objection's going to be overruled. You may answer.

The stipulated portions of Victim's testimony from the preliminary hearing were read into evidence because Victim was unavailable. In pertinent part Victim stated:

Victim: And when he quit talking on the telephone, he threw the telephone and hit me in the face.

Prosecutor: He hit you in the eye that you're pointing to?

Victim: Hit me in the eye[.] ... And then he run over there ... what he generally did was run over there ... and put his thumb in my mouth and so he could control me.

All of the alleged hearsay testimony concerned statements from Victim to the witnesses. In general, each witness testified that Victim told him/her that Appellant had hit him in the head with a telephone and/or put his fingers in Victim's mouth. There were no new facts alleged in any of the witnesses' testimony. Victim's testimony, admitted by way of stipulation, likewise stated that Appellant "threw the telephone and hit me in the face ... and put his thumb in my mouth." The court properly ruled that the statements were not being admitted for the truth of the matter asserted, but for how and when the witnesses became involved as the events unfolded. Furthermore, the witnesses' testimony was "merely cumulative" to Victim's own testimony.

■ Appellant now argues that even if the evidence was cumulative it had the effect of improperly bolstering the testimony of Victim. " 'Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony.' " *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006) (quoting *State v. Wolfe*, 13 S.W.3d 248, 257 (Mo. banc 2000)). Furthermore, it is not improper bolstering if the out-of-court statement is offered for relevant purposes other than corroboration and duplication. *Id.*

■ Appellant never objected on the grounds that any of the witnesses' testimo-

---

**3.** There was no objection to Ms. Cassey's testimony that Victim told her "that Larry guy had hit him."

ny improperly bolstered Victim's testimony. When defendant fails to object and preserve the objection for appellate review, this Court may invoke the plain error rule. *State v. Hanson,* 735 S.W.2d 100, 101 (Mo.App. E.D.1987); Rule 30.20.[4] When resorting to plain error, a heavy burden is placed on defendant to make a clear showing of manifest injustice if the rule is not invoked. *Id.* Where appellant makes no effort to meet this burden other than to simply allege that prejudice or injustice has occurred the appellant has not met his burden. *Id.* Likewise, here, Appellant has made no effort to show the requisite miscarriage of justice, contending only that the prosecutor caused manifest injustice by leading the court to use the evidence to bolster Victim's case. There was no evidence admitted by each of the witnesses that embellished or changed the testimony of Victim. As this was a court-tried case, the court could properly review the evidence as merely Victim's assertion of the events as told to several individuals. His assertions to each of the witnesses did not make it more likely that it was true that Appellant threw a telephone at Victim and injured him. We decline plain error review. Point II is denied.

The judgment is affirmed.

GARRISON, J., LYNCH, C.J., concur.

4. All rule references are to Missouri Court Rules (2007), unless otherwise specified.